# UNITED STATES v. UNION PACIFIC RAILROAD COMPANY.

## MOTION AS TO FORM OF MANDATE.

No. 446. Submitted December 19, 1912.—Decided January 6, 1913.

Each case under the Sherman Act must stand upon its own facts and this court will not regard the methods provided in decrees of other cases as precedents necessarily to be followed where a different situation is presented for consideration.

The ultimate determination of the affairs of a corporation rests with its stockholders and arises from their power to choose the governing board of directors; and this court will not approve a method of distributing stock of a railroad company held by a competitor so that the natural result will be that a majority of the governing boards of both roads shall consist of the same persons.

In this case it is not impossible under the plan proposed that this result will happen and therefore it is not approved.

The main purpose of the Sherman Anti-trust Act is to forbid combinations and conspiracies in undue restraint of interstate trade and to end them by as effectual means as the court may provide.

A court of equity dealing with an illegal combination should conserve the property interests involved, but never in such wise as to sacrifice the purpose of the statute.

Without precluding the District Court from considering all plans submitted as provided by the former opinion and the decree (*ante*, p. 61) this court now holds that a transfer of the stock of the Southern Pacific Company to the stockholders of the Union Pacific Railroad Company would not so effectually end the combination as to comply with the decree.

THE facts, which involve the method of effectually dissolving a combination found to be illegal under the Sherman Anti-trust Act, are stated in the opinion.

*The Attorney General* for the United States.

*Mr. John C. Spooner, Mr. John G. Milburn, Mr. Maxwell Evarts* and *Mr. N. H. Loomis* for appellees, Union Pacific Railroad Company and Oregon Short Line Railroad Company.

MR. JUSTICE DAY delivered the opinion of the court.

On December 2, 1912, this court handed down an opinion and remanded this case to the District Court of the United States, whence it came, with instructions to enter a decree which would provide an injunction as to voting the stock of the Southern Pacific Company acquired by the Union Pacific Railroad Company, and directed the court to further hear the parties in order to make a decree effectually concluding the operating force of the combination created by the purchase of the Southern Pacific Company's stock. The parties were given three months from the receipt of the mandate of this court by the District Court to propose plans, and it was directed that any one adopted by the court should be such as would effectually dissolve the unlawful combination.

The mandate of this court not having issued, on December 19, 1912, a motion was made in which the Attorney General of the United States and counsel for the appellees the Union Pacific Railroad Company and the Oregon Short Line Railroad Company (the latter holding the stock for the Union Pacific Company) joined in asking this court "to instruct the United States District Court for the District of Utah, by a provision incorporated in the mandate of this court, when issued, or otherwise, whether or not a sale of the Southern Pacific Company shares held by said appellees to the shareholders of appellee Union Pacific Railroad Company, substantially in proportion to their respective holdings, or a distribution thereof by dividend to the Union Pacific stockholders entitled to such dividend, would, in the opinion of this court, constitute a disposition of said shares in compliance with the opinion herein filed on December 2, 1912."

In pursuance of the request thus preferred by the United States and the appellees named, it becomes necessary now to determine whether the distribution or sale pro-

posed of the Southern Pacific Company's shares will comply with the decree ordered to be entered by the former opinion of this court.

The Southern Pacific Company's stock, held by the Oregon Short Line Company for the Union Pacific Company, amounts to $126,650,000, par value, in shares of $100 each, and constitutes 46% of the Southern Pacific Company's stock, enough, as we have heretofore found, to effectually control the Southern Pacific Company. As stated by the appellees, the Union Pacific Company has outstanding $99,569,300, par value, of preferred stock. and $216,646,300, par value, of common stock, all in shares of $100 each, amounting in all to $316,215,600, and also has outstanding $37,000,000 of bonds convertible into stock, and the appellees further state that its stock is distributed among over 22,000 holders.

It is contended on behalf of the appellees that the distribution of the Southern Pacific Company's stock, held, as we have stated, by the Oregon Short Line Company for the Union Pacific Company, among so many stockholders will effectually conclude the combination decreed to be ended by the former order of the court. It is insisted that such distribution will prevent the continued operation of the combination for the control of the Southern Pacific Company by a competing company, which the Union Pacific Company was found to be, and that it is authorized under the practice in respect to such decrees as settled by the previous decisions of this court in affirming the decree of the Circuit Court in *Northern Securities Co.* v. *United States*, 193 U. S. 197, and *Harriman* v. *Northern Securities Co.*, 197 U. S. 244, and the decree of the Circuit Court in *Standard Oil Co.* v. *United States*, 221 U. S. 1.

In the *Northern Securities Company Case*, after providing for orders of injunction to prevent the continued operation of the Northern Securities Company, which

controlled the Northern Pacific Railway Company and the Great Northern Railway Company, it was provided (p. 355):

"But nothing herein contained shall be construed as prohibiting the Northern Securities Company from returning and transferring to the Northern Pacific Railway Company and the Great Northern Railway Company, respectively, any and all shares of stock in either of said railway companies which said, the Northern Securities Company, may have heretofore received from such stockholders in exchange for its own stock; and nothing herein contained shall be construed as prohibiting the Northern Securities Company from making such transfer and assignments of the stock aforesaid to such person or persons as may now be the holders and owners of its own stock originally issued in exchange or in payment for the stock claimed to have been acquired by it in the aforesaid railway companies."

Upon the affirmation of this decree by this court in 193 U. S. 197, the Northern Securities Company proceeded to reduce its outstanding capital stock from $395,400,000 to $3,954,000, providing for such reduction by requiring each holder to surrender to the company for retirement 99% of the shares held by him, and upon surrender by a stockholder the company assigned and transferred to him proportionate amounts of the stock of the Northern Pacific Company and Great Northern Company which had been placed with the Northern Securities Company, the holding company, for the purpose of creating the combination, which the court had held to be illegal, and this plan of distribution was approved by this court in 197 U. S. 244. In other words, the stock of the holding company was reduced and the surplus of assets created by such reduction, the stock of the Northern Pacific Company and the Great Northern Company, was distributed among the stockholders of the Northern Secu-

rities Company, thereby effectually ending the combination.

In the *Standard Oil Company Case* the majority of the stock of nineteen oil companies had been placed in the control of a holding company, the Standard Oil Company of New Jersey, with a capital stock of $100,000,000, the stock of the latter corporation being issued to the holders of the stock in the nineteen companies in exchange for their stock. This holding company was held to be a combination and conspiracy in restraint of trade and commerce, and, after awarding injunctions, it was provided:

"But the defendants are not prohibited by this decree from distributing ratably to the shareholders of the principal company the shares to which they are equitably entitled in the stocks of the defendant corporations that are parties to the combination."

It is evident in that case, as in the *Northern Securities Company Case*, that the distribution of the shares and stocks of the subsidiary companies, parties to the combination, among the shareholders of the Standard Oil Company of New Jersey, was to end the combination which had been decreed to be in violation of law, and prevent the continued control of the subsidiary companies by the holding company.

As was said in the opinion filed in this case, however, each case under the Sherman Act must stand upon its own facts, and we are unable to regard the decrees in the *Northern Securities Company Case* and the *Standard Oil Company Case* as precedents to be followed now, in view of the different situation presented for consideration.

The Southern Pacific Company's stock was mainly purchased from private parties, legatees of the Huntington estate, and it is evident that it is impossible to restore the *status quo* by the return of such stock to the persons from whom it was purchased upon such vendors refunding the purchase money.

The plan proposed in the present motion of distributing the stock among the shareholders of the Union Pacific Company or of selling it to such shareholders will in effect transfer the stock from the Oregon Short Line Company, which now holds it for the Union Pacific Company, to the stockholders of the latter company, who own and control that company. Upon the face of it, this would seem to be a proposition to perpetuate the domination and control of the Union Pacific Company over the Southern Pacific Company, because of the power given to the Union Pacific Company's stockholders to choose the directors of the Southern Pacific Company. The ultimate determination of the affairs of a corporation rests with its stockholders and arises from their power to choose the governing board of directors. Unless otherwise provided by law, the stockholders may authorize the board of directors to delegate to an executive committee the authority to do any and all acts which the directors are authorized to do. The executive committee thus derives its authority from the stockholders through the board of directors. *Union Pacific Railway Co.* v. *Chicago, Rock Island & Pacific Railway Co.,* 163 U. S. 564, 597. In the present case the record discloses this mode of management of both the Southern Pacific Company and the Union Pacific Company, and, since 1905, as the proof shows, a majority of both executive committees consisted of the same persons and Mr. Harriman was chairman of both committees.

It is contended for the appellees, however, that, in view of the great number of widely scattered stockholders of the Union Pacific Company, there is no probability of their acting together to continue the control of the Union Pacific Company over the Southern Pacific Company. Indeed, this is said to be impossible. But we are unable to accede to this contention. Bearing in mind the object of the statute to end such combinations and the duty of

the courts in dealing with them to make such decrees as will most thoroughly effectuate that purpose, it is not consistent with that end to order such distribution of the stock as may fail to discontinue the control denounced, and as in all probability will fail to efficiently enforce the statute. It is by no means improbable, but quite likely, that, if the stock was transferred to the stockholders of the Union Pacific Company by distribution among them, the large stockholders could, by purchases and transfers of the stock, get into their own hands the power of choosing directors of both companies, and thus, though in a different manner, the Southern Pacific Company would continue to be in the practical control of the Union Pacific Company, which has been found to be a rival and competing company within the meaning of the law. So of the privilege of sale to the stockholders in proportion to the amount of their holdings.

In considering these questions we must bear in mind not only the number of stockholders, but the character of the distribution of the stock among them. In the brief and exhibits of the appellees filed with this motion it is shown that of the 22,150 stockholders of the Union Pacific Company, 68, owning 5,000 or more shares each, hold together $139,782,700 of the stock and 300 others, owning from 1,000 to 5,000 shares each, hold together $59,020,700 of the stock, and that the two groups (comprising 368 stockholders) hold $198,803,400 or 62.8% of the stock, while the remaining stockholders (21,782) control only $117,412,200 of the stock. Many small shareholders might not wish to purchase the Southern Pacific Company's stock, and the privilege might be readily acquired from them by the larger and more active interests vested in the hands of the large stockholders, and thus again the condition forbidden be created and perpetuated.

The main purpose of the act is to forbid combinations and conspiracies in undue restraint of trade or tending to

monopolize it, and the object of proceedings of this character is to decree, by as effectual means as a court may, the end of such unlawful combinations and conspiracies. So far as is consistent with this purpose a court of equity dealing with such combinations should conserve the property interests involved, but never in such wise as to sacrifice the object and purpose of the statute. The decree of the courts must be faithfully executed and no form of dissolution be permitted that in substance or effect amounts to restoring the combination which it was the purpose of the decree to terminate.

In rejecting the plan for the transfer of the Southern Pacific Company's stock held for the Union Pacific Company, either by distribution or sale to the stockholders of the Union Pacific Company, we do not mean to preclude the District Court from considering and acting upon plans which may be submitted to it under the former opinion and decree of the court. We are of opinion, however, and now hold that the proposed plan of disposition of the entire stock holding of the Union Pacific Company in the Southern Pacific Company by transfer to the stockholders of the Union Pacific Company will not so effectually end the combination as to comply with the decree heretofore ordered by this court to be entered.

*So ordered.*

MR. JUSTICE VAN DEVANTER took no part in the hearing or determination of this motion.