## In re CONSOLIDATED ELECTRIC & GAS CO.

### No. 382.

District Court, D. Delaware.

April 10, 1944.

Ralph C. Binford and David K. Kadane, both of Philadelphia, Pa., for Securities and Exchange Commission.

George B. Pidot, of New York City, for Consolidated Electric & Gas Co.

Perry M. Chadwick (of Chapman & Cutler) of Chicago, Ill., for Harris Trust & Savings Bank, trustee.

LEAHY, District Judge.

Securities and Exchange Commission applies under Sec. 11(e) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A.

§ 79k (e), for approval of a certain plan of Consolidated Electric and Gas Company [1] as fair, equitable and appropriate to effectuate the provisions of Sec. 11(b) of the Act. Harris Trust and Savings Bank, of Chicago, Illinois, Trustee under an indenture securing certain bonds which have been assumed by Consolidated, opposes court approval on the ground that the plan (a) is not "fair and equitable", (b) not "necessary", and (c) is not a "plan" under Sec. 11(e). The attack comes from four sides: (1) the trust indenture covenants relating to redemption of bonds before maturity require payment of the stated premium; (2) when the plan calls for redemption of the bonds without payment of the agreed premium Sec. 26(c) of the Act, 15 U.S.C.A. § 79z (c), and Amendment V of the Constitution are violated; (3) Sec. 11(e) requires a single plan, comprehensive enough so that when carried out the holding company system affected will be brought into complete conformity with Sec. 11(b) of the Act; and (4) there being no "plan" under Sec. 11(e), it was not proper for the Commission to find the (so-called) plan sub judice either "fair and equitable" or "necessary". Counsel have agreed there are no fact questions. Nevertheless, after hearing and an examination of all the evidence, the court concludes it necessary under Rule 52(a), Federal Rules of Civil Procedure, to make the following.

Findings of Fact: 1. Consolidated is a Delaware corporation and an inhabitant of Delaware under Sec. 25 of the Act, 15 U.S.C.A. § 79y, 28 U.S.C.A. following section 723c, a holding company under Sec. 2 (a) (7), 15 U.S.C.A. 79b (a) (7), and has filed a notice of registration, as a holding company, under Sec. 5(a), 15 U.S.C.A. § 79e (a). On December 31, 1942, Consolidated controlled forty-four subsidiary companies which were, for the most part, public utility companies (as defined in Sec. 2(a) (5)) organized in various states and operating in twenty-two states, in Puerto Rico, the Phillipine Islands and in Spain, Canada, the Dominican Republic, and the Republic of Haiti.

2. During 1943, Consolidated through sales of securities and assets of subsidiaries (followed by liquidation of the subsidiary companies) disposed of sixteen of its subsidiaries, all of which were public utility companies, for the purpose of complying with Sec. 11(b) of the Act. As of December 31, 1943, Consolidated's security structure was

| | |
|---|---:|
| Federated Utilities, Inc., First Lien Collateral Trust 5½% Bonds, due March 1, 1957 (assumed by Consolidated) | $ 4,960,500. |
| Southern Cities Utilities Company Thirty-Year 5% First Lien and Collateral Trust Bonds, Series A, due April 1, 1958 (assumed by Consolidated) | 6,623,500. |
| Collateral Trust Bonds (Consolidated) due August 1, 1957, and 2 series due August 1, 1962 | 19,849,500. |
| 6% Demand Note of Islands Gas and Electric Company guaranteed by Consolidated | 2,500,000. |
| *Preferred Stock, $6 cumulative, no-par-authorized, 400,000 shares; issued, 183,012 shares (37 shares held in treasury); outstanding, 182,975 | 18,297,300. |
| Class A non-cumulative participating stock—entitled to a preference dividend of $1.75 a share and preference in liquidation of $25 a share—authorized, issued and outstanding, 1,480,000 shares of $1 par value each | 1,480,000. |
| Common stock—authorized, issued and outstanding, 1,000,000 shares of $1 par value each | 1,000,000. |

| | |
|---|---:|
| *At December 31, 1943, the dividend arrearage claim of the preferred amounted to | 12,414,832. |

3. On January 31, 1943, Consolidated purchased the 6% demand note of $2,500,000 issued by its totally owned subsidiary, Islands Gas and Electric Company—Consolidated guarantor—and held by Interna-

---

[1] In addition to "Consolidated" the references will be: Federated Utilities, Inc. as "Federated"; Harris Trust and Savings Bank as "Trustee"; Central Illinois Electric and Gas Co. as "Central"; and the Public Utility Holding Company Act of 1935 (Title I of an Act of Congress approved August 26, 1935, 49 Stat. 803–838, 15 U.S.C.A. § 79 et seq.) as "the Act".

tional General Electric Company, Inc., for 85% of its principal amount plus accrued interest.

4. On November 9, 1943, Consolidated owned all the voting securities of Central consisting of 74,242 shares of no par common. The stock was pledged with the Trustee as security for 5½% bonds issued by Federated under the terms of the original indenture—executed March 1, 1927—securing said bonds, and of a supplemental indenture, and thereafter assumed by Consolidated.

5. On November 9, 1943, Consolidated and Central jointly applied to the Commission for authorization and approval (a) to reclassify all of Central's outstanding capital stock into 400,000 shares of common with a $15 par, or an aggregate par value of $6,000,000; (b) the sale of such stock to the public; and (c) the application of the proceeds to the redemption of the Federated bonds by the payment to the holders of such bonds the principal amount without premium but plus accrued interest to a date 60 days after the date of the first publication of a notice by Consolidated of the imminent retirement of said bonds. Since November 9, 1943, seven amendments to the application have been filed with the Commission by Consolidated and Central. Public hearings have been had on the application (notice thereof having been published in the Federal Register) before a Trial Examiner designated by the Commission.

6. On February 4, 1944, the Commission made certain findings upon the application and entered an order authorizing the proposed reclassification of the common stock of Central. In this finding the Commission found that the planned divestment by Consolidated of its interest in Central and the proposed application of the proceeds of the sale of the new stock were necessary to effectuate the provisions of Sec. 11(b) of the Act; and by its order the Commission approved the plan as submitted by Consolidated to the extent of authorizing the reclassification and the invitation by Consolidated of competitive bids pursuant to Rule U–50 of the Commission for the sale of said stock.

7. On February 15, 1944, the Commission made further findings that the proposed sale of the reclassified stock of Central was necessary to effectuate the provisions of Sec. 11(b) of the Act and fair and equitable to all persons affected and, in respect of such proposed sale, approved said plan and authorized the sale of the stock for $7,052,000—the highest and best bid—but reserved jurisdiction as to the disposition of the proceeds.

8. On February 18, 1944, the Commission made supplemental findings that the payment of Federated bonds in the principal amount plus accrued interest as provided in the plan was fair and equitable.[2]

9. On February 18, 1944, Consolidated, having sold the common stock of Central for $7,052,000, the release of such stock from the lien of the indenture securing the Federated bonds—for delivery to the purchaser—was accomplished by depositing with the Trustee the proceeds of the sale of the stock in substitution for the securities sold.

10. The Commission found that Central could not have been retained within the Consolidated holding company system, under Sec. 11(b) (1), as a system additional to any integrated system presently controlled by Consolidated; and, consequently, the sale of the Central stock and the retirement of the Federated bonds were necessary to effectuate the provisions of Sec. 11(b) (1).

11. The Commission found that the continued existence of the Consolidated system in any form which supported its recent security structure—particularly the Federated bond indebtedness—is incompatible with the requirements of Sec. 11(b). This court finds the retirement of the Federated bonds is appropriate to simplify the security structure of Consolidated.

12. In accordance with Sec. 11(e), Consolidated requested the Commission to apply to a court to enforce and carry out the provisions of the plan for the retirement of the Federated bonds.

Discussion. 1. The primary inquiry is whether the covenants in the indenture respecting redemption are applicable to the present situation. The pertinent clause (Supplemental Indenture, Sec. 2, Art. 1) provides that "the bonds of the first series *at the option of the Company* [emphasis added] may be redeemed prior to maturity * * * in the manner and upon the terms provided in Article IV of the Origi-

---

[2] The findings, opinions and orders which have been referred to are published in the Commission's Holding Company Act Releases Nos. 4874, 4895, and 4900.

nal Indenture and upon payment of the redemption prices" specified in the Supplemental Indenture.[3] The redemption premium upon the Federated bonds at the present time and until March 1, 1947, is 2¾% of the principal amount of said bonds.

█ Federated bondholders do not have an absolute claim to the payment of the premium; at most, here is a contingent claim if the bonds are redeemed prior to maturity "at the option of the Company". Such option simply gives the company the right to mature its bonds at a date earlier than that otherwise provided. There is no provision for payment of a premium in the event of acceleration of the maturity date by reason of default or otherwise. The language of the indenture, then, plainly indicates that the parties did not contemplate that the redemption provision should be effective upon action taken by the corporation in an effort to comply with the mandate of Congress as embodied in the Public Utility Holding Company Act of 1935. Clearly on principle, the indenture covenants respecting redemption are inapplicable where the retirement proposed is not voluntary. This view is supported by judicial authority. In the Matter of North Continent Utilities Corporation, D.C.Del., 54 F.Supp. 527; City National Bank & Trust Co. of Chicago v. Securities and Exchange Commission and North American Light & Power Company, 7 Cir., 134 F.2d 65; New York Trust Co., et al., v. Securities and Exchange Commission, 2 Cir., 131 F.2d 274.[4]

█ The Trustee contends, however, that the proposed retirement is voluntary because the company itself submitted the particular plan for retirement, and further, because it is possible that some other plan might have been acceptable to the Commission which would have—presumably—preserved the premium feature. Whether the proposed retirement is voluntary depends not merely upon the act of performance by Consolidated in making its application to the Commission, but also upon the attending circumstances and conditions. That the company submitted the particular plan for retirement does furnish some basis for the assertion that it was a voluntary one. But this is by no means conclusive. The record, for example, shows that the existence of the Consolidated holding company system in its present form and the continued existence of its present capital structure are incompatible with the requirements of Sec. 11(b) of the Act.[5] That section requires Consolidated to contract into a single integrated system. This does not mean that the Central stock had to be sold; Consolidated might have, under other and different circumstances, kept Central as its integrated system. But, it could not have done this and left the Federated bonds unpaid. Such senior securities could not have rested solely on Central's common stock alone since its funded debt amounts to approximately $16,250,000.[6] See Holding Company Act Release No. 4895. Obviously some alteration in the capital structure had to be made. In view of this operative fact, the Com-

[3] The indenture (Sec. 1, Art. IV) also provides: "in case the Company *shall desire to exercise any rights* to redeem and to pay off all the bonds of a particular series, or a part thereof, as the case may be, in accordance with the *right reserved* so to do, it shall give notice that the Company has elected." (Italics supplied.)

[4] For prior administrative rulings to the same effect, see Securities and Exchange Commission's Holding Company Act Releases—The United Light and Power Company No. 3345; North American Light & Power Company No. 3658; The United Light and Power Company No. 4215; Community Gas and Power Company No. 4395; North Continent Utilities Corporation No. 4686; Cities Service Power & Light Company No. 4944.

[5] The Commission: "It is apparent, and we find, that the continued existence of the Consolidated holding company system in anything resembling its present form or

magnitude is wholly incompatible with the requirements of Section 11(b). It is further apparent, and we further find, that no comprehensive reorganizataion of the Consolidated system is feasible, or could be accomplished consistently with the statutory standards, which would result in the survival of Consolidated as an entity which could support the outstanding Federated bonds." See, Release No. 4900, p. 6 et seq. Moreover, the facts of the widely scattered location of the properties and the varied nature of the business of the subsidiaries as well as the complexity of the corporate structure of Consolidated were carefully examined by the Commission before approving the plan sub judice. See Holding Company Act Release No. 4874, p. 3.

[6] The percentage of Central's funded debt to net property after elimination of certain write-offs is 92.8%. See Holding Company Act Release No. 4874, p. 6.

mission was justified in finding that the proposed retirement was the result of legal compulsion rather than the voluntary act of the corporation.[7] New York Trust Company v. S. E. C., supra, and City National Bank & Trust Co. v. S. E. C., supra. That Congress intended that the requirements of Sec. 11(b) of the Act should be mandatory upon the companies affected (independently of the institution of proceedings by the Commission) is manifest from the language of Sec. 11(e). This conclusion is reenforced by the authorization that applications under Sec. 11(e) could be made "at any time after January 1, 1936" while proceedings by the Commission under Sec. 11(b) (2) could be instituted only "after January 1, 1938". It is a highly improbable inference that the particular plan would have been proposed absent the legal compulsion requiring some alteration in the capital structure. I accordingly hold that the plan for the proposed retirement is involuntary on the part of the company; and the payment of the Federated bonds is directly related to compliance by Consolidated with Sec. 11(b) (1).

2. The Trustee insists, however, simply on the basis of fair and equitable treatment, that the Federated bondholders should receive compensation, independently of the indenture provisions, for the termination of their investment before the date designated in the contract. It is argued that such compensation is necessary to satisfy the "fair and equitable" requirements of Sec. 11(e). But I think payment of the bonds at par plus accrued interest, and without the premium, is fair and equitable. When a company is subject to the Act, the quantum of participation of the various security holders is determined by the application of fair and equitable standards to particular factual situations. In re United Light & Power Co., D.C.Del., 51 F. Supp. 217. The Federated bonds were initially sold to the public at 94¾ in March, 1927, were quoted at a large discount for most of the intervening period, and were never quoted as high as 100 until shortly before the present proposals of Consolidated

were filed. These facts and the attending circumstances are amply sufficient to justify the non-payment of the premium. Manifestly, under a different fact situation the Commission might properly determine that the contract premium or other and different compensation should make up such payment. In the Matter of North Continent Utilities Corporation, D.C.Del., 54 F.Supp. 527. Cf. In the Matter of the Philadelphia and Reading Coal and Iron Company, S. E. C. (1941, Corporate Reorganization Release No. 50A).

3. The Trustee's final argument is that the plan (a) violates Sec. 26(c) of the Act, (b) Amendment V of the Constitution and (c) that a plan cannot be approved unless it is single, comprehensive and integrated. These contentions are without merit. Since, in view of my holding here, the company was not obligated, under the circumstances, by contract to pay the premium on the Federated bonds, there can be no violation of Sec. 26(c) of the Act. City National Bank & Trust Co. v. S. E. C., supra. That the present plan is sufficiently comprehensive is likewise settled by judicial authority. United Gas Improvement Co. v. S. E. C., 3 Cir., 138 F.2d 1010. Cf. City National Bank & Trust Co. v. S. E. C., supra. As to the alleged violation of Amendment V of the Constitution, United States v. Union Pacific R. Co., 226 U.S. 470, 33 S.Ct. 162, 57 L.Ed. 306, and Continental Insurance Company v. United States, 259 U.S. 156, 42 S.Ct. 540, 66 L.Ed. 871, by way of analogy at least, teach that rights of security holders may be altered and adjusted to the extent necessary to effectuate the object and purposes of compliance with the anti-trust laws. And, even if it be said that the Commission's findings and recommendations constitute an alteration of rights, such is but an incident of the exercise of the power granted by the Congress in enacting the Public Utility Holding Company Act of 1935, and there is no violation of the due process clause of the Fifth Amendment. Louisville & Nashville R. Co. v. Mottley, 219 U.S. 467, 484, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A.,N.S.,

---

[7] The Commission advances the alternative argument that the indenture covenants relating to redemption are inapplicable in any event because general rules of construction preclude an interpretation holding such provisions applicable in a situation which could not have been reasonably foreseen by the parties. I think this is a non sequitur because it assumes that the plan for the proposed retirement is the result of legal compulsion which is the very question in controversy. But, in view of my holding that the plan for the proposed retirement is involuntary, this alternative argument becomes immaterial.

671; Philadelphia B. & W. R. Co. v. Schubert, 224 U.S. 603, 32 S.Ct. 589, 56 L.Ed. 911; Addyston Pipe & Steel Co. v. United States, 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136; United States v. Southern Pacific Co., 259 U.S. 214, 42 S.Ct. 496, 66 L.Ed. 907; Norman v. Baltimore & Ohio R. Co., 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885, 95 A.L.R. 1352. I conclude, therefore, by making the following formal

Conclusions of Law. 1. This court has jurisdiction of the subject matter and the persons affected by the submitted plan.

2. The Commission gave reasonable notice and opportunity for hearing upon the plan later presented for enforcement by this court; and reasonable notice and opportunity for hearing before this court upon the issues raised by the application of the Commission in accordance with Sec. 11(e) of the Act.

3. The sale and application of the proceeds of the Central stock—to the extent necessary for the retirement of the Federated bonds—were appropriate to effectuate the provisions of Sec. 11(b) within the meaning of Sec. 11(e) of the Act.

4. The indenture under which the Federated bonds were originally issued called for payment of a premium only upon redemption upon the option, election, or voluntary action of the obligor. The planned retirement of the bonds here is not voluntary but results from an effort to comply with Sec. 11(b) of the Act. Hence, the holders of the bonds are not entitled to be paid the redemption premium which would otherwise be payable upon a voluntary redemption; but payment of the principal amount plus interest, in accordance with the plan, is the fair equivalent of the rights of the holders of such bonds.

5. The plan for the retirement of the Federated bonds is fair and equitable to the holders and to the other security holders affected thereby.

6. To the extent necessary to carry out the plan, approved by the Commission and approved here, it is appropriate for this court to take exclusive jurisdiction of Consolidated and such of its assets as are on deposit as security for the Federated bonds; and by order the court will direct consummation of the plan, i. e., a direction that the Trustee (a) pay the Federated bonds in accordance with the plan, and (b) deliver to Continental Illinois National Bank and Trust Company of Chicago, Trustee under

other Consolidated's indentures (which constitute a second lien) all securities and cash in excess of the sums necessary (1) to retire all of said Federated bonds and (2) to pay the charges and expenses of Harris Trust and Savings Banks, as trustee under the indenture securing the Federated bonds.

7. The plan having been approved by the Commission and by this court in accordance with Sec. 11(e) of the Act, by order to be entered all persons will be enjoined from instituting or maintaining any action in any court, or any proceeding before any administrative body, tending to obstruct the execution of the plan.

A form of order should be submitted granting the present application to enforce and carry out the plan, incorporating the pertinent matters found above.