### FLEETWAY, Inc., v. PUBLIC SERVICE INTERSTATE TRANSP. CO.
No. 4534.

District Court, D. New Jersey.
Jan. 10, 1933.

Supplementary Opinion March 3, 1933.

Louis B. LeDuc, of Camden, N. J., for plaintiff.

Clifford A. Baldwin, of Camden, N. J., for defendant.

AVIS, District Judge.

The bill in this cause is filed to restrain the defendant from continuing certain practices which plaintiff claims to be in violation of the Sherman Anti-Trust Act (15 USCA §§ 1–7, 15 note) and also of the Clayton Act (38 Stat. 730).

The defendant is a New Jersey corporation, owning buses which it operates in interstate commerce between the state of New Jersey and the city of Philadelphia, via the Camden and Philadelphia bridge.

Plaintiff's bill alleges, generally, that it is operating a fleet of eleven buses between the Fairview section of Camden, N. J., and Reyburn Plaza, Philadelphia, and return, and has been so operating since September 9, 1932; that when it started operations the defendant already had a line of buses carrying passengers to and from Fairview and Philadelphia, engaged in interstate commerce. The bill alleges, and the evidence by ex parte affidavits shows, that when plaintiff started to run its buses it charged a fare of 10 cents per passenger each way in its first zone between Reyburn Plaza and Ninth street and Kaighn avenue, Camden, and a fare of 15 cents each way to or from any place in its second zone between Reyburn Plaza and Fairview. At the beginning it also sold strip tickets, at following prices: In first zone 12 for $1; in second zone, 12 for $1.50. The individual charge was the same as charged by defendant, but defendant sold no strip tickets. Later, on October 7, 1932, plaintiff put into effect a new schedule of fares, charging 15 cents for a round trip to and from any point in its first zone, and 25 cents for the round trip in its second zone. The bill alleges that with this reduced fare, and the defendant not meeting the new rates, the plaintiff materially increased its business up to November 9, 1932.

It further appears by the bill and affidavits that, on this latter date, the defendant established a new rate, charging 10 cents for a round trip in the first zone and 20 cents for a round trip in the second zone. The bill alleges that this rate is charged only on directly competing lines; that on other lines of the defendant, it still adheres to the old higher rates; that the action of the defendant tends to a monopoly, and is otherwise in violation of the anti-trust laws above noted. The bill further alleges "wildcatting" and interference by buses of defendant with those of plaintiff, and that the effect will be to drive the plaintiff out of business, and stifle competition.

The plaintiff claims a right to relief by injunction under the provisions of section 16 of the Clayton Act (15 USCA § 26), the relative part of which reads as follows: "Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this chapter, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue."

It will be observed that this section of the act authorizes relief "against threatened loss or damage by a violation of the antitrust laws," and, under its provisions, plaintiff claims the defendant has violated the second section of the Sherman Act (15 USCA § 2).

I have examined this act carefully, and the decisions thereunder, and have been unable to find any judicial construction applying to the facts in the instant case.

All of the cases reported, where relief was granted, involve combinations held to be in restraint of trade, and tending to the detriment of the public, and in instances where the

control was such as to indicate or show that the right to continue would permit the exclusion of competition. The operation of buses in interstate traffic is not controlled by any statutory provisions. The method of operation is over an interstate bridge, which is open to all upon payment of the toll charged. There could not be, in my opinion, any monopoly of the business, nor could action of defendant tend to monopoly, except by reason of the suggestion of counsel for plaintiff that the effort of the defendant is to so lower the fares as to drive the plaintiff out of business, because of the inability of the plaintiff to meet the rates set by the defendant.

I am unable to conclude that a case of this character comes within the provisions of section 2 of the Sherman Act. Section 1 of the act reads, in part, as follows: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 USCA § 1.

The second section provides a penalty for certain acts applying to "every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations. * * *" 15 USCA § 2.

It has been held that the second section is intended to reach the end prohibited by section one. If this is correct, although the individual or corporation would be guilty of a misdemeanor, it could only arise out of some combination in form of a trust or otherwise or conspiracy.

The only cases that we have been able to find which do not involve contract or agreement between different persons or corporations are United States v. Great Lake Towing Co. (D. C. N. D. Ohio, E. D.) 217 F. 656, and United States v. Eastman Kodak Co. (D. C. W. D. N. Y.) 226 F. 62, both being based upon consolidations of interest, or control of stock of other corporations conducting similar business, and acts thereunder which constituted the violation.

There is no suggestion of combination or control against the defendant in the instant case, but the claim is based entirely upon individual fare cutting, and claimed unfair operating tactics. I am convinced that section 2 of the Sherman Act (15 USCA § 2) does not apply to the facts produced in the instant case.

The plaintiff claims relief also under the provisions of section 2 of the Clayton Act (15 USCA § 13), the pertinent part of which reads as follows: "It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly to discriminate in price between different purchasers of commodities, which commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, where the effect of such discrimination may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

This section refers to "commodities" only. And although some courts have applied it to "service," claimed by attorney for the plaintiff to be in the same class as furnishing transportation, I cannot so construe the word in that manner. In my opinion "commodities" is not applicable to transportation by buses, and consequently plaintiff is not entitled to relief under this section.

The prayer of the bill, in effect, is a request to this court to issue an injunction to fix a minimum rate of charge to be made for services performed in transportation of passengers in interstate commerce.

No case has been referred to indicating that the court, in a proceeding of this character, has such power.

I do not believe that, under the law relied upon, this court has the authority to issue a restraining order, the effect of which would be to determine a rate to be charged.

A preliminary injunction should not be granted by a court of equity, unless the right to the relief is clear; and I am constrained to say that I am not satisfied that the facts and law are sufficiently clear to justify me in the issuance of such relief in the instant case.

In addition, I have considerable doubt as to the right of the plaintiff to relief, based upon the general equity principle of the acts and attitude of plaintiff. The plaintiff instituted the business of passenger transportation, in competition with the defendant, in September, 1932, and immediately made a reduction in the prevailing rates of fare; about a month later, and before the defendant had made any effort to meet the new rates, it made another and further reduction. To meet this competition, the defendant reduced its charges to a point which, the plaintiff says, it is not able to profitably meet.

The present suit is a personal one for the

protection of the business of the plaintiff, and not for the benefit of the public.

I am convinced that the circumstances are such as to indicate that the reduced rates complained of are caused entirely by the action of the plaintiff, who is asking for equitable relief.

The preliminary injunction is refused.

Supplementary Opinion.

This case is submitted to the court on final hearing, by stipulation, upon bill and answer and affidavits, filed on motion for preliminary injunction. This motion was denied by the court, and the findings of fact and law are set forth in a memorandum, filed January 10, 1933.

Upon consideration of the case as now presented, ·my conclusion is that the bill should be dismissed for the reasons stated in the memorandum heretofore filed, and a decree will be signed accordingly.