HARTFORD-EMPIRE CO. ET AL. *v.* UNITED STATES.

NO. 2.

Decided April 2, 1945.

*Solicitor General Fahy* for the United States.

*Messrs. John T. Cahill, Thurlow M. Gordon, Stuart S. Wall* and *Jerrold G. Van Cise* for the Hartford-Empire Co. et al.; *Mr. Boykin C. Wright* for the Corning Glass Works; *Messrs. Robert T. Swaine, Lloyd T. Williams, Henry A. Middleton* and *George B. Turner* for the Owens-Illinois Glass Co. et al.; *Messrs. Stephen H. Philbin* and *Joseph D. Stecher* for the Hazel-Atlas Glass Co. et al.; and *Messrs. Arnold Boyd* and *Hamilton Vreeland, Jr.* for the Knox Companies.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

Subsequent to the announcement of the decision of the court in the above cases, the United States filed a petition for clarification or reconsideration.

We have no occasion to reconsider the opinion as respects the necessity for modification of the decree entered by the District Court. In the many cases which have come here for review of decrees in suits brought by the Government for violation of the Sherman Law, it has never been suggested that this court must accept the decree fashioned by the trial court, if we affirm that court's findings as to violation of the statute, and cannot modify the terms of relief as drafted by the court below. The practice has been the contrary.[1] This is not only in conformity to the unquestioned power of an appellate court in an equity cause, but because in suits under the Sherman Act, it is unthinkable that Congress has entrusted the enforcement of a statute of such far-reaching importance to the judgment of a single judge, without review of the relief granted or denied by him.

In order that there may be no misunderstanding we think it well to add to the opinion in the following particulars.

1. The opinion states (p. 411):

"The royalties paid to the receiver by Hartford's lessees may, unless the District Court finds that Hartford has, since the entry of the receivership decree, violated the anti-trust laws, or acted contrary to the terms of the final decree as modified by this opinion, be paid over to Hartford. In any event Hartford should receive out of these royalties compensation on a *quantum meruit* basis, for services rendered to lessees."

---

[1] *Swift & Co.* v. *United States*, 196 U. S. 375, 396; *Harriman* v. *Northern Securities Co.*, 197 U. S. 244; *Standard Oil Co.* v. *United States*, 221 U. S. 1, 81; *United States* v. *American Tobacco Co.*, 221 U. S. 106, 184; *United States* v. *Terminal Railroad Assn.*, 224 U. S. 383, 409; *United States* v. *Union Pacific R. Co.*, 226 U. S. 470; *United States* v. *Swift & Co.*, 286 U. S. 106; *Local 167* v. *United States*, 291 U. S. 293, 299; *Sugar Institute* v. *United States*, 297 U. S. 553, 602; *United States* v. *Univis Lens Co.*, 316 U. S. 241, 254; *United States* v. *Bausch & Lomb Optical Co.*, 321 U. S. 707, 723–728.

The Government points out that had it not been for the receivership, many of the licensees (most of whom were not parties to the proceeding) would have paid no further royalties to Hartford, and that they may be able to justify refusal of payment of any royalties from the date of the receivership, and ought not to be put into the position of recovering royalties paid to the receiver, from Hartford.

It has been open to each of these licensees at any time to repudiate its lease and license, to return the leased machinery, to refuse to pay further rentals or royalties, and to defend any suit arising out of such refusal to pay, either for infringement or otherwise. It may be that licensees have not taken this course because they relied on the decree as entered by the District Court. In such reliance they may have expected that the moneys paid the receiver would be repaid to them.

In view of the modifications required by the opinion of this court, such licensees must pay reasonable rental and service charges on a *quantum meruit* basis (leaving out of consideration any amount otherwise payable for the privilege of practicing the patented inventions involved) in respect of the machines used in the interim. Unless Hartford, since the entry of the decree by the District Court, has been guilty of some added violation of the anti-trust laws, licensees must elect (a) to remain licensees on such reasonable rental and royalty basis for the future as the District Court may fix, or (b) repudiate the leases and litigate their rights as against Hartford to retain any portion of the rents and royalties paid. Depending upon such election of each of the lessees, the District Court may, on the application of each, make an appropriate order for the disposition of the fund in the light of the licensees' election and the principles stated in the opinion of this Court.

2. The Government expresses apprehension lest the statement in the opinion that the decree of the District

Court is vacated and the cause remanded for further proceedings would result in the existence of no judgment in effect in the interval between the issue of this court's mandate and the formulation of a new decree by the District Court. We need only say that the decree from which the appeal was taken stands until further order or orders are entered by the District Court pursuant to mandate.

3. In various portions of the opinion direction is given for provisions in the decree relating to "feeders, formers, stackers and lehrs, and patents covering these or improvements of them, or methods or processes used in connection with them . . ." It is said that this phraseology may omit the Owens and Hartford suction machine patents, including O'Neill suction patents acquired by Owens. The language used was intended to cover such suction machines.

4. The opinion states (p. 419):

"Hartford and the other corporate defendants mentioned in paragraph 24 should be required to lease or license glass making machinery of the classes each now manufactures to any who may desire to take licenses . . ."

It is suggested that this language might permit Hartford to cancel all its leases and retake the leased machinery.

That was not intended by the language used. It was intended that if persons desired to take a license instead of taking a lease, and Hartford were willing to license without leasing machinery, this might be done on reasonable terms. Hartford should of course be compelled to lease machinery covered by its patents according to its past practice, on reasonable terms, and should be required to license the patents involved for manufacture and use or sale, also on reasonable terms.

5. The Government finds some dubiety in the phrase, relating to revision of paragraph 24 (a) of the District

Court's decree, viz., "should be required to lease or license glass making machinery of the classes each now manufactures to any who may desire to take licenses." The language is amended to add after the word "manufactures" the words "or leases."

6. The Government suggests that the opinion should be clarified to permit independent machinery manufacturers to obtain licenses. The opinion is so modified, and the corporate defendants are required to license all applicants to make, use, or sell the patented machines at reasonable royalties.

7. The Government apprehends that the use of the word "standard" with respect to the royalties to be charged by Hartford may be taken as a determination that present royalties are reasonable. To avoid any misunderstanding we substitute for the phrase "standard royalties" the phrase "uniform reasonable royalties." Such uniform reasonable royalties may include rental of the machines, the servicing of the machines, or the use of the patents for the production of glassware on the leased machines, the licensee to have the option at his election to take and pay for any or all of these privileges. Hartford should also be required to license the patents for manufacture for use or sale, but with the limitation that similar licenses at uniform reasonable royalties must be available to all who desire them.

8. The Government desires that power be reserved to the District Court to dissolve Hartford.

The District Court, in its opinion, concluded, and we think properly, that in the situation presented a dissolution of Hartford and a distribution of its patents into various hands would create a worse situation than that envisaged by the District Court's decree. We think this is equally true of the status to be established by the modification of the decree required by our opinion. The opinion did not disturb paragraph 57 (A) of the decree entered

below. If it be found that a decree entered in accordance with this court's opinion has failed to bring about a correction of the violations of the anti-trust law which are the basis of the relief granted, it will of course be open to the Government, on a proper showing, to apply for further or other relief.

MR. JUSTICE DOUGLAS, MR. JUSTICE MURPHY and MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE RUTLEDGE, dissenting.

The necessity for a second opinion, in effect a further detailed writing of the decree in this case, gives added point to the view expressed in an earlier dissent, 323 U. S. 438, that this Court should not undertake the long distance writing of the detailed provisions for relief, amounting to a framing of the decree, in Sherman Act proceedings. I do not say that Congress has entrusted enforcement of the Sherman Act "to the judgment of a single judge." [1] I do say that his judgment upon the facts of this case is necessarily better informed than that of appellate judges, however conscientious or industrious; and accordingly his findings, when they are sustained without

---

[1] There can be no question of this Court's power to review and modify terms of relief in Sherman Act suits, when they exceed the limits imposed by law or amount to an abuse of discretion. As the Court's opinion indicates, this power has been frequently exercised, most often in the cases cited to strengthen rather than to weaken the remedy where violation has been found, *United States* v. *American Tobacco Co.*, 221 U. S. 106, 184; *United States* v. *Union Pacific R. Co.*, 226 U. S. 470; *United States* v. *Swift & Co.*, 286 U. S. 106; *United States* v. *Univis Lens Co.*, 316 U. S. 241; and in no instance substantially to the extent of rewriting the detailed provisions of the decree in extenso, as is done in this case; cf. *Swift & Co.* v. *United States,* 196 U. S. 375, 396; *Standard Oil Co.* v. *United States,* 221 U. S. 1; *Sugar Institute* v. *United States,* 297 U. S. 553; *United States* v.

qualification upon the character and extent of the viola-
tion, are entitled to similar weight upon the character of
the relief required, unless they exceed the limits imposed
by law or amount to a clear abuse of discretion. Many of
the detailed revisions made here in the decree cannot
qualify in either category. A court which so accurately
found the facts and made conclusions concerning the viola-
tion hardly can have erred so consistently or so grossly as
this Court's action necessarily implies was the case.

Further elaboration of this view is not now required,
except to say that if the Court is thus to take over the
business of the trial courts, actually if not in form com-
mingling its appellate with original jurisdiction, of course
it should spare no pains to make its mandate clear or to
correct minute errors inevitable in performing the task
without having heard the evidence, however great the
care given to it.

This reminder alone perhaps would not justify further
objection by dissenting justices. It cannot be captious,
however, if they find themselves unable to accept, through
acquiescence by silence, stated views of the record at vari-
ance with their own. It is stated in the revised opinion
that "the District Court, in its opinion, concluded, and we
think properly, that in the situation presented *a dissolu-
tion* of Hartford and a distribution of its patents into
various hands *would create a worse situation than that
envisaged by the District Court's decree.*" (Emphasis
added.) I am unable to locate such a finding or conclusion
in the record.

A former dissenting opinion pointed out (323 U. S.
445) that the District Court did not deny the Govern-

*Bausch & Lomb Optical Co.*, 321 U. S. 707. In *Local 167* v. *United
States*, 291 U. S. 293, the judgment and decree were affirmed without
change, the Court observing, at 299: "The United States is entitled
to effective relief. . . . In framing its [the decree's] provisions doubts
should be resolved in favor of the Government and against the
conspirators."

ment's prayer for dissolution. It only deferred action on that request and this was expressly upon the condition that Hartford meet the conditions of its decree, including compulsory licensing, royalty free, and transfer of its management to court officers, not only pending appeal but until the court should find, after a reasonable time, that competition had been restored to the industry. The court expressly stated: "If after the expiration of a reasonable time, it appears to the court that the steps he is now taking are insufficient *to restore a free and competitive status to the industry*, the receivers shall be ordered to submit a plan or plans for the dissolution of Hartford." The court further said, "Dissolution is not resorted to by the court unless Hartford wills it so. The measures herein adopted by the court *are deemed necessary to install competition to the industry . . .*" It previously had stated that "no half-way measures will suffice," that the Government had requested dissolution, but that "the court, however, is first going to *make an attempt to avoid that, if it is possible to do so and at the same time restore competition* to the industry. If this cannot be worked out to the satisfaction of the court, dissolution will be ordered." (Emphasis added.)   46 F. Supp. 621, 622, 620.[2]

The District Court has made no finding that competition has been restored to the industry. This Court does not purport to make one, and has no power to make one, in the absence of evidence to show that competition has been restored. No such evidence has been taken. Yet, as I read its terms, this Court's decree, including the present revisions, forbids the District Court to make one upon remand of this cause.

---

[2] It is hardly necessary to point out specifically the large difference between a finding that competition has been restored to the industry and one that "a dissolution of Hartford and a distribution of its patents into various hands would create a worse situation than that envisaged by the District Court's decree."

Clearly competition had not been restored to the industry when the District Court's decree was entered in August, 1942. The only occasion for its decree then, or for continuance now of the relief as modified, was and is to bring about such a restoration. This Court's original decree declared, "The receivership should be wound up and the business returned to Hartford." 323 U. S. 411. That direction was made upon the assumption that the District Court had concluded "that a continuance of certain of Hartford's activities would be of advantage to the glass industry and denied, *for the time being,* that form of relief," i. e., dissolution. 323 U. S. 408. That assumption has now been stated in the present opinion as one that the District Court "concluded, *and we think properly,* that in the situation presented *a dissolution* of Hartford and a distribution of its patents into various hands *would create a worse situation* than that envisaged by the District Court's decree." The further conclusion is expressed that "this is equally true of the status *to be established by the modification* of the decree required *by our opinion.*" Unless this language is at once a ruling that dissolution was not justified and would not have been sustained, if ordered in 1942, and that it should not now be decreed, I am unable to understand its meaning. That it is so effective appears from the further direction, *"If it be found* that a decree entered *in accordance with this court's opinion* has failed to bring about a *correction of the violations* of the anti-trust law which are the basis of the relief granted, it will of course be open to the Government, on a proper showing, to apply for further or other relief." (Emphasis added.)

In my judgment this effectively modifies, if it does not nullify, paragraph 57A of the District Court's decree in so far as it reserved the power to order dissolution of Hartford, if after a reasonable time competition should not be restored, notwithstanding the apparent disclaimer of

this effect. No finding can now be made, nor can one be made for some time in the future, that "a decree entered *in accordance with this court's opinion* has failed to bring about a correction of the violations," much less that competition has been restored in the industry, for the simple reason that no such decree has been entered. If only such a finding can sustain an order for dissolution, obviously no such order can be made upon the remand of this case, whether or not the District Court then might find, upon conclusive evidence, that competition had not been restored, even under the more stringent terms of its decree. Only at some indefinite future time could such an order be entered, based upon evidence that the milder terms of this Court's decree had failed to restore competition.

In my opinion, therefore, the District Court is foreclosed from finding that competition has not been restored, even under the more stringent provisions of its decree, during the nearly three years it has been in force. If in that time those measures have not been effective to restore competition, as the court clearly thought might prove to be true, the greatly softened measures of this Court's decree hardly can be expected to accomplish that object. Yet it effectually forbids the District Court to examine the effects of its decree upon the restoration of competition, to make a present finding, if the evidence should justify it, that competition has not been, or cannot be, restored, and to decree dissolution accordingly.

In effect this Court finds the fact for itself, without evidence and, in my opinion, without right. That is true unless the purpose is to rule, as a matter of law, that Hartford cannot now be dissolved and is entitled to continue in business, thus dominating the industry, even though competition has not been restored. This comes near, if not entirely, to destroying the long-established power to order dissolution.

I think also that the royalties collected and impounded by the court for Hartford's protection in the event of reversal of its judgment should be returned to those from whom they were collected. Apart from the view, previously expressed, that the District Court's finding should not be disturbed to the effect that free licensing was required to restore competition if Hartford were to continue in business and in control of its more than 600 patents, these funds were collected only by reason of the District Court's order requiring this in order to preserve the status quo pending appeal. No one can tell now whether or not the licensees, but for this order, would have elected to refuse to pay the royalties and litigate their right to do so. Those funds should not be returned to Hartford, to be retained by it as the product or consequence not only of its violation but also of the court's order.

Moreover, under the terms of this Court's revised decree, if the licensees who have paid in the royalties elect to remain licensees, and pay the reasonable royalties required "for the future," it is not clear that provision is made for repayment to them of any portion of the royalties collected which may be in excess of the reasonable royalties this Court's decree requires be paid for the future. The opposite appears to be the course directed. The revised opinion requires the licensees to elect "to *remain* licensees on such reasonable rental and royalty basis *for the future* as the District Court may fix" or to repudiate the leases and litigate with Hartford their rights "to retain *any portion* of the rents and *royalties paid*." (Emphasis added.) Under the terms of the District Court's decree, the receivers have collected rents and royalties "under the present contracts and agreements of Hartford in its licensing and lease system." Hartford has no more right to retain unreasonable royalties collected while the District Court's decree has remained or continues to be in effect than it has to collect such royalties for the future.

Mr. Justice Black joins in this opinion.