**RUDENBERG v. CLARK, Attorney General.**

**Civil Action No. 3873.**

United States District Court
D. Massachusetts.

Nov. 15, 1948.

Willis H. Taylor, Jr., and J. Philip. Anderegg, both of New York City, for plaintiff.

Charles J. Kalinauskas, Asst. U. S. Atty., of Boston, Mass., Harry L. Jones and Irving J. Levy, Sp. Assts. to Atty. Gen., and Walter T. Nolte, Atty., Dept. of Justice, of Washington, D. C., for defendant.

WYZANSKI, District Judge.

Plaintiff, the owner of U. S. Letters Patent Nos. 2,058,914 and 2,070,319 covering electron microscopes, applies for modification of a consent decree entered by this Court after mandate from the Circuit Court of Appeals.

In this Court plaintiff had prevailed in a suit to recover the two aforesaid patents which had been vested by the Alien Property Custodian, predecessor of the Attorney General. See 72 F.Supp. 381. The Attorney General took an appeal but prior to argument in the Circuit Court of Appeals agreed upon a settlement with plaintiff. The settlement was embodied in a consent decree drawn by the parties and presented to that Court. Without holding any hearing that Court issued a mandate to this Court directing entry of that consent decree. This Court entered the decree October 16, 1947.

The consent decree ordered the Attorney General to transfer the patents to plaintiff (Par. 2) and ordered the plaintiff to "grant to any applicant making written request to him therefor a non-exclusive unlimited license to use, make, and sell under said U. S. Letters Patent * * * such licenses to be granted on a non-discriminatory basis as to terms between applicants. A copy of the form of license to be used by the plaintiff is attached * * *" (Par. 3). Jurisdiction of the cause was "retained for the purposes of enabling any of the parties to this decree to apply to the Court at any time for such further orders and directions as may be appropriate for the correction, construction, or carrying out of this decree * * *" (Par. 6).

The "form of license" attached to the consent decree included a grant, under these two American patents, to "the Licensee" of a license to manufacture, use and sell the patented apparatus (Par. 1). The Licensee agreed to pay plaintiff as royalty upon each complete apparatus blank per cent of the net selling price (Par. 2). If plaintiff should "grant licenses * * * upon a lower rate of royalty than that specified in paragraph 2 hereof," plaintiff should notify the Licensee who would then be entitled to request the lower rate (Par. 3). Paragraph 6 recited that "Licensee has paid and Rudenberg has accepted, as and for the damages which Rudenberg has sustained and the profits which Licensee has made by reason of Licensee's past unlicensed manufacture, use or sale of apparatus of the kinds licensed hereunder, the sum of blank dollars, as liquidated damages therefor. The computation of the sum stated was made in accordance with the provisions of paragraph 2 hereof and at the specified royalty." Paragraph 7 gave Dr. Rudenberg an option to "terminate this agreement, (a) on the failure of Licensee to render statements, to pay royalties or to make any other payments due under this agreement or (b) on Licensee's failure to comply with any other provision of this agreement * * *." The agreement concluded with a statement it was made in and governed by the laws of Massachusetts.

Sometime in the fall of 1947 Dr. Rudenberg gave a non-exclusive license to Farrand Optical Co., Inc., in the form prescribed by the decree. The blank in paragraph 2 of the form was so filled in as to show a royalty rate of 5% (Ex. E).

At various times before and after granting the Farrand license, Dr. Rudenberg proffered a license at 5% to Radio Corporation of America—R. C. A.—which Dr. Rudenberg alleges has been manufacturing and selling apparatus infringing his patents. R. C. A. has not taken a license.

Dr. Rudenberg now seeks a modification of this Court's decree so that Paragraph 3 thereof shall read as follows: "3. The

plaintiff, his heirs and assigns, shall grant to any applicant making written request to him therefor a non-exclusive unlimited license to use, make and sell under said U. S. Letters Patent Nos. 2,058,914 and 2,070,319 (including continuations, renewals, divisions and extensions thereof), such . licenses to be granted on a non-discriminatory basis as to terms between applicants. A copy of the form of license to be used by the plaintiff is attached hereto. Plaintiff may extend to any person an offer in writing to grant such a license. Such offer to grant a license shall include a copy of this decree and of the form of license attached hereto. Any offeree to whom such offer shall have been extended may, if unwilling to accept the offer so extended, apply to this Court not less than 60 nor more than 120 days from the date such offer was received by him for the determination of a reasonable royalty, giving notice of his application to plaintiff. In any such court proceeding, the burden of proof shall be on the plaintiff to establish the reasonableness of the royalty stipulated in his offer. If the Court fixes a royalty on such application, plaintiff shall issue and the offeree shall accept a license providing for royalties at the rate fixed by the Court. If the offeree, having applied to the Court, fails to accept the license, such action shall be ground for the dismissal of his application and for the rescission of any and all of the offeree's rights under this paragraph. If the offeree fails within 120 days from the receipt of plaintiff's offer either to accept plaintiff's offer or to apply to this Court as hereinabove provided, plaintiff may apply to the Court for an order requiring the offeree to show cause why all rights of the offeree under this paragraph should not terminate. Plaintiff shall make of record in the United States Patent Office any license granted under the provisions of this paragraph within a reasonable period after its execution."

One of the admitted objects of the modification is to enable Dr. Rudenberg to put R. C. A. in a position where if it does not now take a license at a rate regarded by this Court as reasonable, R. C. A. shall run the risk of being denied a license in the future.

The Attorney General objects to this Court making the proposed modification. He contends that it does not fall within Paragraph 6 of the decree, that plaintiff has made no showing warranting the modification, that plaintiff when he consented to the decree bargained away the privilege which he now seeks to utilize and that even if a modification were in order the petition seeking it should originally be filed with the Court of Appeals.

These issues turn upon a construction of the consent decree and the annexed form of license agreement. And the power initially to make a construction of the decree is admittedly placed by Paragraph 6 of the decree in this Court.

A casual reading of the consent decree appears to require Dr. Rudenberg to issue licenses "to any applicant" whether or not he has continuously infringed the patent even after repeated reasonable offers of a license. But this superficial construction will not bear examination.

1. It is unlikely that the purpose of the consent decree was to go further than to impose on Dr. Rudenberg the type of compulsory licensing which the Department of Justice and certain others have for a long time been seeking to subject, if not all patentees, at least all patentees who have violated the anti-trust laws. See footnotes 17-20 in Hartford-Empire Co. v. United States, 323 U.S. 386, 417, 65 S.Ct. 373, 89 L.Ed. 322. So far as I am aware, in all previous examples and discussions of compulsory licensing where the patentee was made subject, or proposed to be made subject, to an obligation to license at a reasonable royalty or on a nondiscriminatory basis or both, it has not been contemplated that the obligation should enure forever to the advantage of a persistent infringer who had continuously refused offers of a license at a reasonable royalty and on a non-discriminatory basis. [See the exhaustive analysis in a Note on Compulsory Licensing By Antitrust Decree, 56 Yale L.J. 77 (1946). Compare Temporary National Economic Committee, Final Report and Recommendations, Senate Doc. No. 35, pp. 36, 37, 77th Cong., 1st Sess. (1941)] Indeed, the court decree which went furthest in imposing compulsory licensing—

the decree of the District Court in United States v. Hartford-Empire Co., D.C.N.D. Ohio, 46 F.Supp. 541, which was in fact relaxed on appeal in Hartford-Empire Co. v. United States, 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322; Id., 324 U.S. 570, 65 S.Ct. 815, 89 L.Ed. 1198—specifically permitted the patentee to bring infringement suits against future infringers who refused to accept licenses. [See paragraph 16 of the decree of the District Court in the Hartford-Empire Case to which reference is made in 56 Yale L.J., op. cit., at p. 89 note 31.] If it has never been proposed to require a patentee who has been adjudged a violator of law to hold himself open forever to the obligation to license infringers who have refused reasonable licenses, it would be anomalous to suppose that the Attorney General or Dr. Rudenberg intended Dr. Rudenberg to be subject to such an obligation. So far as the record shows, he has violated no law. Indeed, if this Court was correct in its decision reported in 72 F.Supp. 381, his patents were seized by an erring Alien Property Custodian who did not know or did not correctly appraise all the facts. And Dr. Rudenberg is subject to compulsory licensing only because he wanted to make a quick settlement to get back a wasting asset, and to be in a position to charge royalties which could not be collected during an appeal.

2. To construe the decree as keeping licensing opportunities forever available to persistent infringers would serve no public policy and no public purpose that the Attorney General could have had in mind when the consent decree was negotiated. The Attorney General undoubtedly was seeking to further what he might have described as an open-door policy assuring equality of opportunity to all who might have use for inventions disclosed in patents. That policy was intended to give the same chance to all who are or may be in competition regardless of whether they have or lack large funds and influential connections. But it was not intended to place the individual holder of patents at the mercy of large corporate enterprises which could use the invention, decline to accept the inventor's reasonable offers, allow him to sue for infringement and in the end, if beaten in the infringement suit, pay him not even a royalty high enough to cover the expenses of the litigation but the lowest royalty rate the inventor is receiving from anyone whatsoever. Such a result would enhance not diminish the evils with which an Attorney General might properly be concerned.

3. To construe the consent decree as inapplicable to the case of those who after its entry persist in infringing accords with certain detailed provisions of the decree. For example, Paragraph 7 of the Form of Agreement attached to the decree gives Dr. Rudenberg an express option to terminate the license of one who has defaulted on its terms. To be meaningful, this express option must of necessity carry with it an implied option to refuse to issue—at least for some period—a new license to the same defaulter. If then it was expected that Dr. Rudenberg should have a right to refuse a license to one who had merely reneged on his contract, it must have been expected that Dr. Rudenberg should have a right to refuse a license to one who persisted in tortiously using his invention despite reasonable offers of a contract. Deliberate tort-feasors are not customarily regarded as entitled to preference over mere contract-breakers.

4. There is nothing in Paragraph 6 of the Form of Agreement which militates against a construction allowing Dr. Rudenberg to refuse a license to one who after the decree persistently infringes and refuses reasonable offers of a license. It may at first seem that this Paragraph indicates that the consent decree specifically contemplates that a compulsory non-discriminatory license shall be available to every infringer the moment he is content to make a settlement on the terms provided in Paragraph 6 of the Form. But this is not a correct inference. Paragraph 6 was drafted to cover the specific case of those who had been infringing prior to the consent decree and who would promptly seek a license. Such persons were properly the object of the Attorney General's special solicitude. While he and his predecessor, the Alien Property Custodian, had had the patents vested in themselves, they had acted as though they were owners. They

had invited the public to take royalty-free licenses. And now those invitees were trapped by the decision of this Court to the effect that during all this time Dr. Rudenberg was the true owner. It was quite understandable that when he came to negotiate the consent decree, the Attorney General, while he recognized that Dr. Rudenberg was entitled to some compensation for past infringement, was also solicitous lest past infringers be mulcted. He, therefore, insisted that if they acted promptly, those past infringers should get as favorable treatment as the ordinary new applicant who acted promptly. But the Attorney General was not and is not concerned with protecting those who on their own responsibility, without invitation from any public official and without serving any public purpose, tortiously use property which the owner has offered to let them use for a reasonable royalty.

· ▆ For the reasons just given I construe the consent decree as not contemplating and not covering the case of a person who after the decree uses Dr. Rudenberg's patents without his consent and after failing to accept his reasonable offers of a license.

▆ Having made this construction, this Court has jurisdiction also to make a modification of the decree to make this construction effective for the protection of parties to the decree. Such a modification may be regarded as one of many possible "orders and directions * * * appropriate for the * * * construction * * * of this decree" (Par. 6), or it may be regarded as an "adaptation to changed conditions," that is the conduct of R. C. A. unforeseen at the time of the decree, United States v. Swift & Co., 286 U.S. 106, 114, 52 S.Ct. 460, 76 L.Ed. 999, or it may be regarded as covering an issue not raised before the appellate court or explicitly or implicitly covered in its mandate. Sprague v. Ticonic National Bank, 307 U.S. 161, 168, 169, 59 S.Ct. 777, 83 L.Ed. 1184. However it be regarded, a modification along the general lines proposed by Dr. Rudenberg seems to me not only within this Court's power, but fair and in accordance with the original settlement between the Attorney General and Dr. Rudenberg which

led to the consent decree. There is only one change in the proposal which seems to me necessary. The third sentence shall be changed to read as follows: "Plaintiff may extend to any person believed by him to be using, making or selling under U. S. Letters Patent Nos. 2,058,914 and 2,070,319 (including continuations, renewals, reissues, divisions and extensions thereof) an offer in writing to grant such a license." The purpose of the change is to limit Dr. Rudenberg's cut-off power to those whom he believes to be infringers.

· Decree modified in accordance with opinion.