**Dr. M. H. CHANDLER and Sidney P. Chandler, Plaintiffs,**

v.

**STERN DENTAL LABORATORY COMPANY et al., Defendants.**

Civ. A. No. 64–H–591.

United States District Court, S. D. Texas, Houston Division.

July 8, 1971.

Sidney P. Chandler, Alpine, Tex., Joe J. Alsup, Alsup & Alsup, Corpus Christi, Tex., for plaintiffs.

M. W. Parse, Jr., Dudley R. Dobie, Jr., Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for defendants.

## MEMORANDUM OPINION

CARL O. BUE, Jr., District Judge.

In this action plaintiffs, as holders of a patent on a teeth protector, the Featherbite, seek to recover damages allegedly resulting from violations of the antitrust laws and patent laws by the defendants. The defendants include, among others, the original licensee of the patent (Harold L. Stern), its as-signee (Featherlax Corp.), the principal directors, officers, and agents of the assignee corporation; the packager of plaintiffs' teeth protector, and a competitor (Custom Made, Inc.). There is no diversity of citizenship between the parties to this cause. As a result, there must be a substantial federal question involved if this Court is to retain jurisdiction. Plaintiffs have asserted numerous allegations relating to the licensing agreement to establish violations of the antitrust laws, the Sherman Act, 15 U. S.C. § 1 et seq. and common law unfair competition, patent infringement, 35 U. S.C. § 271; and false marking, 35 U.S. C. § 292.

At the trial plaintiffs abandoned their allegation of patent infringement. As to the remaining issues, plaintiffs have asserted (1) that the defendants conspired and ultimately monopolized the teeth protector trade and, as a result, suppressed the sales of the Featherbite; (2) that defendants utilized the plaintiffs' patent secrets to imitate their teeth protector; and (3) that defendants sold certain teeth protector containers with plaintiffs' patent number engraved thereon with the intent to counterfeit plaintiffs' patent and/or to deceive the public.

Defendants, on the other hand, allege that this Court lacks jurisdiction over all claims asserted except those relating to antitrust and false marking violations. Further, it is asserted that plaintiffs have not shown an actionable violation of these laws. Additionally, defendants assert two affirmative defenses: (1) that plaintiffs' patent has been misused; and (2) that the patent is invalid.

The relevant facts necessary to permit a decision by this Court will be briefly summarized. On April 11, 1953, Dr. M. H. Chandler entered into a licensing agreement with Harold L. Stern. By the terms of this agreement this defendant was given an exclusive right to produce and market the Featherbite teeth protector. Defendant was required to pay a $.25 royalty for each teeth protec-

tor sold. Subsequently, this defendant assigned the licensing agreement to defendant Featherlax Corporation. Royalties were duly paid on all teeth protectors produced and sold by the licensee. The business prospered until 1963 when disagreements between the parties and acute competition led to the ultimate termination of production and marketing of the Featherbite teeth protector. Just prior to the termination of production, two important events occurred. First, the Featherlax Corporation sold certain teeth protector containers which were previously used to package the Featherbite. These containers had plaintiffs' patent number engraved thereon. Second, Marc C. Grossberg, the son-in-law of Harold L. Stern, applied for and later received a patent on a teeth protector similar in function to the Featherbite. Defendant Grossberg received some assistance from the Stern group in the design and preparation of this teeth protector.

As to the alleged violation of the antitrust laws, plaintiffs rely upon sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. It is alleged that the defendants conspired to monopolize the teeth protector trade and attempted to do so by using their position as exclusive licensee of the plaintiffs' patent to suppress sales of the Featherbite while promoting sales of other teeth protectors. If there is any merit to this claim, it was not demonstrated by the evidence presented by plaintiffs at the trial. Plaintiffs have not shown that defendants conspired or used any other means to restrain trade or commerce; nor have they shown that defendants attempted to monopolize, or, in fact, did monopolize any significant aspect of the trade or commerce material to this action. Indeed, plaintiffs have failed to establish more than a casual connection between the Stern group, the Grossberg patent, and the other defendants. More importantly, there is no evidence that the Stern group ever sold any other type of teeth protector than the Featherbite. Clearly, no actionable violation of the

Sherman Act has been established. Compare United States v. Hartford-Empire Co., 324 U.S. 570, 65 S.Ct. 815, 89 L.Ed. 1198 (1945); United States v. Vehicular Parking, Ltd., 54 F.Supp. 828 (D.Del.), modified on other grounds, 56 F.Supp. 297 (1944), 61 F.Supp. 656 (1945). Furthermore, plaintiffs have failed to establish the requisite damage to their property rights. See Productive Inventions, Inc. v. Trico Products Corp., 224 F.2d 678 (7th Cir. 1955), cert. denied, 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818 (1956).

In an attempt to establish a violation of the false marking statute plaintiffs have alleged that certain containers were produced and sold with the unauthorized imprint of their patent number thereon. The statute, however, requires that such use of a patent number be done "with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public . . . ." 35 U.S.C. § 292. See United States v. Glaxo Group, Ltd., 302 F.Supp. 1 (D.D.C.1969). Defendants have offered unrebutted evidence that the violation was accidental. Testimony was offered that as soon as it was learned that the manufacturer of the containers was using the cast with plaintiffs' patent number engraved thereon, defendants had the patent number removed. Further, the patent number was removed from the containers in the Stern group's possession which they had not already sold. A violation of this provision has not been established. See Filmon Process Corp. v. Spell-Right Corp., 131 U.S.App.D.C. 374, 404 F.2d 1351 (1968); Ansul Co. v. Uniroyal, Inc., 306 F.Supp. 541 (S.D.N.Y.1969).

As to plaintiffs' claims of unfair competition and breach of the licensing agreement, this Court encounters certain jurisdictional problems. Since plaintiffs have abandoned their allegation of patent infringement, there is no pendent jurisdiction pursuant to 28 U.S.C. § 1338 to sustain the unfair competition claim; nor is there a substantial federal question in this action to which the un-

fair competition and the breach of the licensing agreement claims are closely related. As a result, this Court declines to exercise jurisdiction over these claims. *See* United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Chapiewsky v. G. Heileman Brewing Co., 297 F.Supp. 33 (W.D.Wis.1968).

■ Alternatively, plaintiffs' claims, except that of false marking, can be disposed of on the basis of the defendants' affirmative defense of patent misuse. The defendants allege that since the patent was misused, plaintiffs should be precluded from asserting any cause of action based thereon. In Zenith Radio Corp. v. Hazeltine Research, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969), it was stated that:

> And just as the patent's leverage may not be used to extract from the licensee a commitment to purchase, use, or sell other products according to the desires of the patentee, neither can that leverage be used to garner as royalties a percentage share of the licensee's receipts from sales of other products; in either case, the patentee seeks to extend the monopoly of his patent to derive a benefit not attributable to use of the patent's teachings.

395 U.S. at 136, 89 S.Ct. at 1583. As a result, conditioning the grant of a license by a licensor of a patent on the payment of royalties on non-patented products would be a misuse of the patent.

■ It is apparent from the evidence before this Court that plaintiffs insisted and, in fact, coerced defendants at the time the licensing agreement was negotiated into granting royalties on all products sold which related to teeth protectors, whether within the scope of the Chandler patent or not. These negotiations are reflected in the ultimate licensing agreement. This agreement in part states that:

6.

. . . . . .

Any improvements whether patented or not to the Protector patented by Party of the First Part [plaintiffs], made by, through or under Party of the Second Part [defendants], shall be the property of the Party of the First Part.

7.

Each of the Parties hereto shall forthwith communicate to the other Party any improvement and/or future invention he may discover or acquire in connection with Dental Protection, and shall disclose to the other Party the manner of making and using the same, and the Party of Second Part shall be at liberty to produce, manufacture and/or sell such items as he may desire to produce, manufacture and/or sell containing any such improvement or future invention during the continuance of this license and in accordance with the terms of royalty payments hereunder.

Further, at the trial plaintiffs asserted a right to receive royalties on certain thermoplastic sheets, as well as similar teeth protector devices manufactured or sold by the defendants. By plaintiffs' own admissions these products do not come within the scope of the Chandler patent. As a result, it is this Court's conclusion that the patent has been misused. *See* Glen Manufacturing, Inc. v. Perfect Fit Industries, Inc., 420 F.2d 319 (2d Cir.), cert. denied, 397 U.S. 1042, 90 S.Ct. 1365, 25 L.Ed.2d 653 (1970); Beckman Instruments, Inc. v. Technical Development Corp., 433 F.2d 55 (7th Cir. 1970). Accordingly, plaintiffs are precluded from asserting any cause of action premised upon the licensing agreement during the period of the misuse of the patent. *See* Hensley Equipment Co. v. Esco Corp., 383 F.2d 252 (5th Cir. 1967); Columbus Automotive Corp. v. Oldberg Mfg. Co., 387 F.2d 643 (10th Cir. 1968).

■ Defendants have asserted the affirmative defense that the patent is invalid. Specifically, it is alleged that the patent does not satisfy the "non-obviousness" test of 35 U.S.C. § 103. This test requires that the subject matter of a patent as a whole not be obvious, at the time of the invention, to a person having

ordinary skill in the art to which the subject matter of the patent pertains. The "obviousness" issue is to be resolved as follows:

Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.

Anderson's-Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 62, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969). A patent is presumed to be valid. 35 U.S.C. § 282. As a result, the burden of establishing invalidity is upon the party challenging the patent. Defendants have not presented any evidence, except the testimony of Dr. Chandler, as to what a person of ordinary skill in the art would deem obvious in this situation. Consequently, this Court concludes that the defendants have not sustained their burden of proof in establishing the merits of this defense. *See* Sperti Products, Inc. v. Coca-Cola Co., 272 F.Supp. 441 (D.Del.1967), aff'd, 399 F.2d 607 (3d Cir. 1968). Additionally, defendants' request for attorney's fees pursuant to 35 U.S.C. § 285 is denied.

Accordingly, this action will be dismissed. The foregoing constitute the Court's Findings of Fact and Conclusions of Law.